DAVID MARTINEZ, Bar No. 193183
DMartinez@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:      (310) 552-0130
Facsimile: (310) 229-5800

MARTIN R. LUECK (admitted *pro hac vice*)
MRLueck@rkmc.com
EMMETT J. MCMAHON (admitted *pro hac vice*)
EJMcMahon@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402-2015
Telephone:      (612) 349-8500
Facsimile: (612) 349-4181

MATTHEW B. MCFARLANE (admitted *pro hac vice*)
MBMcFarlane@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
601 Lexington Ave., 34th Floor
New York, NY 10022
Telephone:      (212) 980-7400
Facsimile: (212) 980-7499

Attorneys for Plaintiffs
QUEST DIAGNOSTICS INCORPORATED
and QUEST DIAGNOSTICS NICHOLS INSTITUTE

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUEST DIAGNOSTICS INCORPORATED and QUEST DIAGNOSTICS NICHOLS INSTITUTE, <br><br> Plaintiffs, <br><br> v. <br><br> MYRIAD GENETICS, INC., <br><br> Defendant. | Case No. 13-cv-1587-AG (DFMx) <br><br> **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** <br><br> **[FILED UNDER SEAL]** <br><br> Date:    Feb. 3, 2014 <br> Time:    10:00 AM <br> Ctrm:    10D <br> Judge:   Hon. Andrew J. Guilford |

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND.............................................................................. 2

ARGUMENT...................................................................................................... 5

    A.   QUEST'S PROPOSED AMENDMENTS WOULD NOT BE
         FUTILE ................................................................................................. 5

         1.   This Court Has Subject Matter Jurisdiction under 28 U.S.C.
              § 1367 over Quest's State Law Claims................................................ 6

         2.   Quest Has Properly Alleged a Claim for Unfair Business
              Practices under the California Unfair Competition Law ................... 9

                a)   Quest Has Properly Pled Economic Injury............................... 9

                b)   The UCL Applies to Myriad's Misconduct............................. 11

         3.   Quest Properly Pled Defamation and Thus Its Proposed
              Amendments Are Not Futile............................................................ 13

                a)   Myriad's Defamatory Statements Clearly Implicate
                     Quest's Reputation ................................................................ 13

                  b)   Myriad's Defamatory Statements Are False and Myriad
                     Offers Absolutely No Support for Its Contentions
                     Regarding Truth..................................................................... 15

    B.   THE COURT SHOULD IGNORE MYRIAD'S BASELESS
         ALLEGATIONS OF BAD FAITH AND INCORRECT
         CONCLUSIONS ABOUT JUDICIAL ECONOMY ............................. 17

CONCLUSION................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arpin v. Santa Clara Valley Transp. Agency*,
   261 F.3d 912 (9th Cir. Cal. 2001) ................................................................... 12

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
   133 S. Ct. 2107, 186 L. Ed. 2d 124 (2013) ....................................................... 2

*Barker v. Riverside County Office of Educ.*,
   584 F.3d 821 (9th Cir. 2009) .......................................................................... 10

*Barnes-Hind, Inc. v. Superior Court*,
   181 Cal. App. 3d 377, 226 Cal. Rptr. 354 (1986) .................................... 13, 15

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ............................................................................ 12

*Cunningham v. Simpson*,
   1 Cal. 3d 301, 81 Cal. Rptr. 855, 461 P.2d 39 (1969) ................................... 13

*DiGiorgio Fruit Corp. v. AFL & CIO*,
   215 Cal. App. 2d 560, 30 Cal. Rptr. 350 (1963) ...................................... 14, 16

*Echostar Satellite LLC v. Freetech Inc.*,
   No. C07-06124, 2009 U.S. Dist. LEXIS 132350,
   (N.D. Cal. July 7, 2009) ................................................................................. 15

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .......................................................................... 5

*Executive Software North America, Inc. v. Jensen*,
   24 F.3d 1545 (9th Cir. 1994) ............................................................................ 6

*Foman v. Davis*,
   371 U.S. 178 (1962) .......................................................................................... 5

*In re First Franklin Financial Corp. Litig.*,
   No. 08-01515, 2009 U.S. Dist. LEXIS 42031,
   (N.D. Cal. May 6, 2009) ................................................................................... 5

*In re Mattel, Inc.*,
   588 F. Supp. 2d 1111 (C.D. Cal. 2008) ..................................................... 11, 12

*Keniston v. Roberts*,
    171 F.2d 1295 (9th Cir. 1983) ............................................................... 5

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (Cal. 2011) ................................................................. 9

*Liveops, Inc. v. Teleo, Inc.*,
    No. C05-03773, 2006 U.S. Dist. LEXIS 2574,
    (N.D. Cal. Jan. 9, 2006) ...................................................................... 7

*Micro Intern. Ltd. v. Monolithic Power*,
    399 F. Supp. 2d 1064 (N.D. Cal. 2005) ............................................. 8

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988) ................................................................ 5

*Mills v. Ramona Tire, Inc.*,
    No. 07-cv-0052, 2007 U.S. Dist. LEXIS 69623,
    (S.D. Cal. Sept. 20, 2007) .................................................................... 5

*Norwest Mortgage, Inc. v. Super. Ct.*,
    72 Cal. App. 4th 214 (1999) ......................................................... 11, 12

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    213 F. Supp. 2d 1146 (C.D. Cal. 2002) ............................................. 8

*Qualcomm, Inc. v. Motorola, Inc.*,
    989 F. Supp. 1048 (S.D. Cal. 1997) ................................................... 7

*Rosenberg v. J.C. Penney Co.*,
    30 Cal. App. 2d 609 (1939) .............................................................. 14

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ............................................................ 9

*Smith v. Maldonado*,
    72 Cal. App. 4th 637, 85 Cal. Rptr. 2d 397 (1999) ..................... 13, 15

*Southern Cal. Housing v. Los Feliz Towers Homeow.*,
    426 F. Supp. 2d 1061 (C.D.Cal. 2005) .......................................... 9, 11

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (Cal. 2011) ............................................................ 13

*Unique Lighting Sys., Inc. v. Alliance Outdoor Lighting, Inc.*,
    No. 07-cv-104, 2007 U.S. Dist. LEXIS 35750,
    (S.D. Cal. May 16, 2007) .................................................................... 7

*White v. Trans Union, LLC,*
    462 F. Supp. 2d 1079 (C.D. Cal. 2006)...........................................................9, 11

**Rules**

Fed. R. Civ. P. 12.................................................................................................12, 16

Fed. R. Civ. P. 15.........................................................................................................5

**Statutes**

28 U.S.C. § 1367...................................................................................................6, 8

Cal. Civ. Code § 44.....................................................................................................13

Cal. Civ. Code § 45.............................................................................................13, 14

1

## INTRODUCTION

2   Defendant Myriad Genetics, Inc.'s ("Myriad") monopoly on genetic testing

3   for breast and ovarian cancer was built on a patent portfolio that was largely

4   invalidated by the Supreme Court last summer.  As a result, Quest Diagnostics

5   Incorporated and Quest Diagnostics Nichols Institute (collectively, "Quest")

6   subsequently entered the market with *BRCA1/2* tests that do not infringe the

7   remaining patent claims.  Unable to lawfully keep Quest out of the BRCA testing

8   market, and fully aware that Quest will be a formidable competitor, Myriad resorted

9   to defamation and unfair competition.  It contacted Quest's customer, ███████

10  █████████████████████████ whom Myriad knew sent all of its

11  █████ BRCA tests to Quest, and claimed it had supporting data to show that

12  ████████████████ patients had received "inaccurate [test] results" that resulted in

13  "wrong care," and that there were consequent "risks for providers and patients in

14  your plan." Because Myriad knew ████████████ has an exclusive agreement

15  with Quest to provide testing, Myriad could only be referring to Quest as the

16  provider of "inaccurate [test] results".  Myriad's statements are defamatory *per se*.

17  Indeed, Quest's Motion to Amend includes written evidence from ████████████

18  reflecting that it reasonably understood Myriad to represent it had evidence that

19  Quest was causing wrong patient care relating to cancer.   In follow-up

20  communications with ████████████, Myriad could have retracted the defamatory

21  statement, but chose instead to ratify the previous statement by insisting on the need

22  to share the mysterious data so that ████████████ patients would not be

23  exposed to Quest.

24  Myriad's arguments fail on every front.  Myriad opposes Quest's Motion to

25  Amend by claiming that the specific defamatory statement is an "isolated" incident.

26  Myriad, however, offers no supporting declaration, refuses to explain what

27  procedures it employed to make that determination, and flatly refuses to provide

28

any additional information that Quest requested in its attempt to resolve this issue before bringing the Motion to Amend.  At the same time, Myriad argues that the statements at issue are true, but refuses to produce the underlying data upon which the defamatory statements expressly rely.

Myriad's argument that this Court should not exercise supplemental jurisdiction should also be rejected because the patent claims and state law claims share common facts involving the BRCA test.  Any claim by Myriad that Quest allegedly has no economic damage is also unavailing, because defamation *per se* does not require proof of economic damage.  And, the proposed amended complaint expressly pleads that, among other things, the defamatory publication has "the effect of injuring Quest and bringing its business into disrepute."  The argument that "Quest has no ties to California" is equally puzzling, since the proposed amended complaint alleges that Quest Diagnostics Nichols Institute is a California Corporation with its principal place of business in California. The remaining arguments in Myriad's opposition are equally unavailing.

## FACTUAL BACKGROUND

The Factual Background section of Myriad's opposition brief sets forth allegations that are either irrelevant to the defamation claim, or are inferences more appropriate for the jury.  First, Myriad spends considerable effort explaining that it was the first to discover the *BRCA1* and *BRCA2* genes. That has nothing to do with the defamation claim and, as the Supreme Court held last June, "discovery" of a gene mutation has nothing to do with patent eligibility either. *See Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2120, 186 L. Ed. 2d 124 (2013).

Second, Myriad spends four pages characterizing a fictional "race to the courthouse" and its attempts to have this case removed to another jurisdiction. Those issues are fully addressed in the briefing relating to the pending motion to dismiss and have little if any bearing on Quest's motion for leave to amend its

1    pleadings.

2         Third, Myriad devotes considerable attention to Quest's efforts to resolve the

3    dispute over the Myriad email. The correspondence shows that Quest gave Myriad

4    every opportunity to provide evidence that the statement actually was isolated and

5    to provide assurances that the conduct at issue will never happen again.  Quest

6    further asked to review the "data" referenced in the defamatory statement.  Myriad

7    stonewalled on all accounts.

8         On December 4, 2013, Quest contacted Myriad about the defamatory

9    statements (the "Myriad email") and requested, among other things, that Myriad

10   cease and desist from making similar representations, it provide the "recent data"

11   referenced in the Myriad email, and that it produce any other documents that would

12   support the allegation that Quest was causing inaccurate BRCA test results and

13   wrong patient care. Ex. 3.[1] Quest asked for a response by the end of that week, but

14   later agreed to give Myriad more time. On December 11, Myriad responded by

15   claiming that the allegations in the Myriad email were "factually accurate," and that

16   "there is no need for Myriad to provide the additional information you requested in

17   your letter at this time."  Ex. 4. Myriad also stated that it would "instruct its sales

18   force to revise the language," thereby indicating that the Myriad email was not an

19   isolated example of an overzealous salesperson, but the result of a centralized

20   messaging effort controlled by senior Myriad executives.  *Id.*

21        Quest continued to try to resolve the issue with Myriad. Quest wrote back on

22   December 11, and requested the new revised language that Myriad said it would

23   use. Ex. 5. Quest also repeated its request for the information sought in the

24   December 4 email.  *Id.*

25        On December 13, Myriad sent Quest a very carefully worded response.

26   Myriad claimed to be unaware of any other statement by its sales force that

27

28
_____
[1] The exhibits referenced herein were included with Quest's moving papers and
attached to the Declaration of Emmett J. McMahon.  *See* Dkt. No. 32.

specifically "mentioned Quest" and inaccurate test results.  But, as explained later, a defamatory publication does not have to specifically "mention" the victim. Myriad still would not confirm that it did not defame or otherwise mischaracterize Quest without specifically "mentioning Quest."  Myriad also did not provide any information about how thoroughly it investigated the matter, which would have required a review of communications by its large sales force within the nine days since December 4.  Myriad refused to provide the underlying "data" referenced in its email, and refused to provide any information about the alleged corrective action sent to its sales force.  Ex. 6.

Myriad also argues that there were no further communications on this topic, (Docket No. 42, Myriad Br. at 11), but that too is untrue.  Counsel conferred by telephone on December 16.  Ex. 7. During that conversation, Quest *again* asked for more information to resolve this issue.  Myriad refused to provide it.

Finally, Myriad argues that Mr. Morrissey clarified his statements in a follow-up email on December 4. That email, however, shows that Mr. Morrissey continued to assert that "other labs"—labs other than Myriad—had given those incorrect results.  Mr. Morrissey reaffirmed a need to share data with ███████ so that it may "avoid a situation where a patient is managed sub-optimally based on incorrect genetic results."  Ex. 6. It is telling that Myriad continues to refuse to share that very same confirmatory data with Quest now, and this failure casts doubt on Myriad's willingness to take actions that could have avoided additional causes of action. Myriad clearly desired to alert ███████ to an identified "risk" and to provide it information that could "avoid a situation" where a patient receives treatment based on "incorrect genetic test results." No reasonable person would conclude that Myriad was referring to a laboratory other than Quest.  Since all BRCA tests were administered by Quest, there was no need for Myriad to share data about a third-party laboratory.  At a minimum, those allegations require resolution by the jury.

1

**ARGUMENT**

2      It is well established that courts should "freely" and "liberally" grant leave to

3 amend.  Fed. R. Civ. P. 15 (a); *Keniston v. Roberts*, 171 F.2d 1295, 1300 (9th Cir.

4 1983) (leave to amend under Rule 15(a) "shall be freely given when justice so

5 requires"); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.

6 2003) ("This policy [of permitting leave to amend] is to be applied with extreme

7 liberality.").  Defendant Myriad discounts this clear precedent in favor of permitting

8 amendment and instead erroneously claims that Quest's proposed amendments "are

9 futile, evince bad faith, and do not promote judicial economy." Dkt. No. 42, Myriad

10 Br. at 13.   The facts and relevant legal authority demonstrate that Myriad's

11 inaccurate claims are nothing more than a thinly-veiled attempt to avoid the

12 consequences of its defamatory conduct. Quest's amendments are proper and

13 justified; thus, Quest's motion for leave to amend should be granted.

14

15

    **A.   QUEST'S PROPOSED AMENDMENTS WOULD NOT BE FUTILE**

16      Courts may consider the futility of a proposed amendment when deciding a

17 motion for leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However,

18 "[a] proposed amendment can be denied for being futile *only* if no set of facts can

19 be proved under the amendment to the pleadings that would constitute a valid and

20 sufficient claim or defense."  *Mills v. Ramona Tire, Inc.*, No. 07-cv-0052, 2007

21 U.S. Dist. LEXIS 69623, at *15 (S.D. Cal. Sept. 20, 2007) (emphasis added) (citing

22 *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)); *see also In re*

23 *First Franklin Financial Corp. Litig.*, No. 08-01515, 2009 U.S. Dist. LEXIS 42031,

24 at *6 (N.D. Cal. May 6, 2009) ("[A] party should be afforded an opportunity to test

25 his claim on the merits rather than on a motion to amend unless it appears beyond a

26 reasonable doubt that the proposed amended pleading would be subject to

27 dismissal.").  Moreover, the party opposing the motion for leave to amend bears the

28 burden of proving futility.  *Mills*, 2007 U.S. Dist. LEXIS 69623, at *15.  Quest's

proposed new claims are properly pled, as this Court has jurisdiction over the new claims and all elements of the new claims are met.  Accordingly, Myriad's claims of futility must fail.

### 1.   This Court Has Subject Matter Jurisdiction under 28 U.S.C. § 1367 over Quest's State Law Claims

This Court has subject matter jurisdiction over Quest's proposed state law claims under 28 U.S.C. § 1367.  *See* Dkt. No. 32-2, Quest's Proposed First Amended Complaint, ¶ 5.  Section 1367 authorizes district courts to exercise jurisdiction over supplemental state law claims when the state and federal claims at issue arise from "a common nucleus of operative facts" such that a plaintiff "would ordinarily be expected to try them all in a single judicial proceeding."  *Executive Software North America, Inc. v. Jensen*, 24 F.3d 1545, 1552 (9th Cir. 1994).  Here, Quest's federal and state law claims share a common nucleus of operative facts, and thus jurisdiction is present.

Under federal law, Quest seeks a declaration of non-infringement and invalidity of fourteen Myriad patents.  Resolution of Quest's claims concerning non-infringement will necessarily require a thorough analysis of the design, development, functionality, and capabilities of Quest's BRCA Assay (known commercially as BRCAvantage™), which Quest asserts does not infringe Myriad's patents.  Myriad itself admits that the operative facts related to Quest's federal claims "include the identity, development and function of Quest's assays" and "Quest's sale or use of those assays."  Dkt. No. 42, Myriad Br. at 16.  These same operative facts are key to Quest's state law claims for defamation and unfair competition.

The defamatory statements made by Myriad were directed at Quest, its BRCA Assay, and—more specifically—the accuracy and efficacy of Quest's BRCA Assay. Indeed, Myriad expressly references "inaccurate results that have resulted in the wrong care," "risks" to providers and patients, and "data" related to BRCA

testing.  Ex. 2.  Myriad's defamatory and disparaging statements are aimed directly at Quest and the accuracy of Quest's BRCA Assay and the state law claims will likely turn on the same operative facts as Quest's non-infringement claims, including "the identity, development and function of Quest's assays" and "Quest's sale or use of those assays."  Myriad has further emphasized the importance of information concerning the functionality of Quest's BRCA Assay by asserting that its allegations are true; this assertion cannot possibly be tested without a thorough analysis that addresses the operation and accuracy of Quest's product.  In short, the underlying issues in both the federal and state law claims require evaluation of Quest's BRCA Assay.  Thus, the *same evidence* will be pertinent to resolving both the federal and state law claims.

Myriad's assertion that courts consistently dismiss state law tort claims in federal intellectual property infringement suits is simply not supported by the relevant case law from this Circuit.  As one court remarked when presented with the same argument, "[I]t is quite common for courts to see in the same proceeding, intellectual property infringement claims alongside state claims for unfair competition and misappropriation of trade secrets." *Liveops, Inc. v. Teleo, Inc.*, No. C05-03773, 2006 U.S. Dist. LEXIS 2574, at *10 (N.D. Cal. Jan. 9, 2006) (denying motion to dismiss state law causes of action in copyright infringement case and finding that supplemental jurisdiction over state law claims was present); *see also Qualcomm, Inc. v. Motorola, Inc.*, 989 F. Supp. 1048, 1050 (S.D. Cal. 1997) (granting motion to amend complaint for declaratory judgment of patent invalidity and noninfringement to add state law tort claims and rejecting defendant's contention that proposed amendments were futile because "the claims could not withstand a motion to dismiss for lack of jurisdiction or for failure to state a claim"); *Unique Lighting Sys., Inc. v. Alliance Outdoor Lighting, Inc.*, No. 07-cv-104, 2007 U.S. Dist. LEXIS 35750, at *10 (S.D. Cal. May 16, 2007) (denying motion to dismiss state law claims, including unfair competition claims, in patent

infringement case where complaint alleged facts common to all causes of action); *Micro Intern. Ltd. v. Monolithic Power*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005) (asserting state law claims of misappropriation of trade secrets and also seeking a declaration of invalidity and non-infringement of patents under federal law against defendants); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002) (noting that plaintiff asserted both federal law-based copyright and trademark causes of action and state law-based causes of action against defendant).

Moreover, the fact that none of the provisions of § 1367(c) are applicable to this case further demonstrates that supplemental jurisdiction is appropriate.  Section 1367(c) permits a district court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Quest's proposed defamation and unfair competition claims do not raise novel or complex issues of state law; the federal patent law claims, rather than the proposed state law claims, substantially predominate in this action; the Court has not dismissed the claims over which it has original jurisdiction; and there are no exceptional circumstances.  Indeed, Myriad does not even attempt to argue that compelling or other circumstances warrant the application of § 1367(c).

Accordingly, because the same nucleus of operative facts is relevant to Quest's federal and state law claims, and because none of the provisions of § 1367(c) apply, this Court has subject matter jurisdiction over Quest's proposed state law claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.   Quest Has Properly Alleged a Claim for Unfair Business Practices under the California Unfair Competition Law

#### a)   Quest Has Properly Pled Economic Injury

Myriad's argument that Quest has failed to plead economic injury under the UCL ignores both governing law and the allegations in Quest's Proposed First Amended Complaint.

Under *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (Cal. 2011), Quest must only allege *facts* establishing that it suffered some minimum "quantum" of "economic injury." *Kwikset*, 51 Cal. 4th at 323. Importantly, there is neither a formula nor magical words required to allege economic harm. To the contrary, "[t]here are innumerable ways in which economic injury from unfair competition may be shown." *Id.* at 323. For example, Quest may establish economic injury by alleging facts showing that it has "a present or future economic property interest diminished." *Id.*

Thus, in *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006), the Court ruled that damage to the plaintiff's credit as a result of defendants' inaccurate credit reporting was sufficient to establish economic injury under the UCL.  And in *Southern Cal. Housing v. Los Feliz Towers Homeow.*, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005), the Court ruled that the plaintiff, a housing rights center, "has standing because it presents evidence of actual injury based on loss of financial resources in investigating this claim and diversion of staff time from other cases to investigate the allegations here." *Id*. Similarly, in *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010), the Ninth Circuit held that the Plaintiff had standing where she alleged that she would be forced to close her credit account as a result of the defendants' unfair competition.

As in those cases, Quest alleges facts showing that it has "a present or future economic property interest diminished." *Kwikset*, 51 Cal. 4th at 323.  Here, Quest alleges in substantial detail that Myriad undertook a willful and malicious scheme

to unfairly compete with Quest by making false and misleading statements to disparage Quest and its BRCA assay, as follows:

> 75. "I am contacting you to arrange a short in-person or web meeting. The purpose of the meeting is to share recent data that will have a material impact on your health plan specific to genetic BRCA1/2 testing for hereditary cancer. At the moment, there are new labs offering this testing and unfortunately there are patients that have already received inaccurate results that have resulted in the wrong care. It is my understanding that [customer name redacted] is requiring all BRCA testing ordered for their members be run by the lab Quest Diagnostics, even when they specify Myriad's BRACAnalysis as the BRCA test of choice. Considering the risks for the providers and patients in your plan, I would like to take about 30 minutes to walk you through this data and how events like these could be avoided for the providers and members of [customer name redacted]."

*See* Dkt. No. 32-2, Quest's Proposed First Amended Complaint, ¶ 75.

Indeed, the thrust of Quest's allegations, and the reasonable inferences drawn therefrom, are that Myriad acted with the intent to disrupt Quest's business relationships with its customers. *See, e.g., Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (in assessing motion to dismiss, Court "must draw inferences in the light most favorable to the plaintiff"). Quest further alleges, in detail, that Myriad's scheme had the intended effect of harming Quest's business or economic interests:

> 77. The statements in the December 3 publication reasonably and naturally *have the effect of injuring Quest and bringing its business into disrepute*. Indeed, Quest's customer actually had the misperception that Quest's BRCA assay was an inaccurate test that had caused wrong patient care. In response to the December 3 publication, Quest's customer contacted Quest directly "regarding Myriad's claim that Quest is giving inaccurate test results for the BRCA testing." (Exhibit 15). And, in a subsequent communication to Myriad, Quest's customer stated, "Please give me the names of our patients who have been given wrong test results so that I can look further into this."

> \* \* \*

> 78. The statements in the December 3 publication thus

1
2

have had the effect of *injuring Quest* and casting aspersions on the accuracy of Quest's BRCA assay specifically and its business generally.

3
4

*See* Dkt. No. 32-2, Quest's Proposed First Amended Complaint, ¶¶ 77-78 (emphasis added).

5
6
7
8

In short, as in *White*, *supra*, where Plaintiff endured an adverse credit report, and *Los Feliz Towers*, *supra*, where plaintiff lost resources in investigating its claim, Quest has properly alleged economic harm to its business or property sufficient to establish standing under the UCL.

9

*b)   The UCL Applies to Myriad's Misconduct*

10
11

Myriad's argument that the UCL does not apply to this dispute again ignores governing law and Quest's allegations.

12
13
14
15
16
17
18
19
20
21
22

First, the UCL indisputably applies to claims brought by California residents. *See Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 218 (1999) (holding that UCL applies to claims asserted by California residents, irrespective of where alleged conduct occurred).  Here, the proposed First Amended Complaint alleges that Plaintiff Quest Diagnostics Nichols Institute ("Nichols Institute") "is a corporation organized and existing under the laws of the State of California with its principal place of business at 33608 Ortega Highway, San Juan Capistrano, California 92690."  *See* Dkt. No. 32-2, Quest's Proposed First Amended Complaint, ¶ 3.  It also alleges that both Quest Diagnostics Incorporated and Nichols Institute were harmed as a result of Myriad's malicious scheme to disparage them.  *Id.* at ¶¶ 1, 3, 75-79, 168-169.

23
24
25
26
27
28

Second, Quest Diagnostic's UCL claim is proper because Quest alleges that Myriad has significant operations in California. *Id.* at ¶ 6 (alleging that "Myriad conducts substantial business in the State of California," has made "significant strategic investments in this state," and "employs a significant sales and marketing force in [California]."). *See In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) (UCL applied in action brought by non-residents against a non-

PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR LEAVE
TO FILE FIRST AMENDED COMPLAINT

California company based on allegations "many of [Fisher-Price's] executives, including its Vice President of Consumer Products, are located in California."); *cf. Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal. App. 4th at 224 (UCL may not apply extraterritorially to claims brought "for injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, *by defendants whose headquarters and principal places of operations are outside of California.*" (emphasis added)).

Third, even if Myriad had no presence in California, Myriad's argument that its misconduct is limited to a single isolated incident that occurred exclusively outside of California is both unsupported and improper at the pleading stage. Indeed, Quest's proposed First Amended Complaint makes no such allegations, and the exhibits to which Myriad references certainly do not bear this out.  Instead, Quest alleges that Myriad engaged in a scheme to disparage Quest.  *See* Dkt. No. 32-2, Quest's Proposed First Amended Complaint, ¶¶ 75-79.   Myriad is not permitted to controvert these allegations at the motion to dismiss stage by claiming that this scheme is limited to an isolated incident occurring wholly outside of California. *See*, *e.g.*, *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. Cal. 2001) ("[E]xtraneous evidence should not be considered in ruling on a motion to dismiss."); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (excluding material outside the pleadings from consideration on a Rule 12 (b)(6) motion to dismiss).

Finally, it would be premature and improper to decide whether the UCL applies to Myriad's unfair competition claim at the motion to dismiss stage, without a fully developed record.  *See In re Mattel, Inc.*, 588 F. Supp. 2d at 1119 (rejecting defendants' motion to dismiss and holding that reach of the UCL properly determined "after a more thorough development of the facts"); *cf.* Dkt. No. 42, Myriad Br. at 18:4-8 (*citing Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal. App. 4th at 224 (deciding issue based on extensive evidence presented at class certification

1  stage); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (Cal. 2011) (analyzing reach of

2  UCL based on stipulated record)).

3   ### 3.   Quest Properly Pled Defamation and Thus Its Proposed
4   Amendments Are Not Futile

5   Contrary to Myriad's assertions, Quest's proposed amendments properly state

6  a cause of action for defamation.  Myriad's claims that Quest's defamation claim

7  would be futile are not supported by the facts or applicable case law.

8   #### a)   *Myriad's Defamatory Statements Clearly Implicate Quest's Reputation*

9   The defamatory statements made by Myriad were directed at Quest and

10  unquestionably implicate Quest's reputation.  Defamation "involves the intentional

11  publication of a statement of fact that is false, unprivileged, and has a natural

12  tendency to injure or which causes special damages." *Smith v. Maldonado*, 72 Cal.

13  App. 4th 637, 645, 85 Cal. Rptr. 2d 397 (1999).  Libel is a form of defamation, and

14  consists of a "false and unprivileged publication . . . which exposes any person to

15  hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or

16  avoided, *or which has a tendency to injure him in his occupation*."  *See* Cal. Civ.

17  Code §§ 44 (a), 45 (emphasis added).  It is firmly established that "[a] corporation

18  can be libeled by statements which injure its business reputation."  *See Barnes-*

19  *Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 381, 226 Cal. Rptr. 354 (1986).

20  Myriad's statements clearly damaged Quest's business reputation.

21   As fully alleged in Quest's proposed amended complaint, Myriad directly

22  contacted ███████ and published[2] defamatory statements about Quest.

23  Specifically, Myriad informed ██████████ that patients had received "wrong

24

25  _____
[2] Myriad repeatedly implies throughout its Opposition Memorandum that it cannot
26  be held liable for defamation "over a single email."  The law is clearly to the
contrary and confirms that publication need only be made to a single person.  *See*
27  *Smith*, 72 Cal. App. 4th at 645 (explaining that publication need not be to the
"public" at large and that communication of the defamatory statement to a single
28  individual is sufficient) (citing *Cunningham v. Simpson*, 1 Cal. 3d 301, 306, 81 Cal.
Rptr. 855, 461 P.2d 39 (1969)).

care" as a result of "inaccurate [test] results" provided by "new labs."  Ex. 2.  The only "new lab" mentioned by name in Myriad's email is Quest, and ██████ ████ reasonably understood Myriad was representing it had evidence that Quest was causing wrong patient care.  *Id.*  Myriad's statement was not only related to Quest's professional reputation, it damaged Quest's reputation.  Myriad expressly suggested that Quest was responsible for "inaccurate [test] results" that resulted in "wrong care," and claimed to have "data" to support these assertions.  Myriad's statements characterize Quest as incompetent and they are libelous.  *See DiGiorgio Fruit Corp. v. AFL & CIO*, 215 Cal. App. 2d 560, 572, 30 Cal. Rptr. 350 (1963) (explaining that publications that have the "effect of bringing the business of the corporation into public contempt, and making it odious in the estimation of those with whom it has business dealing or connections" are libelous).

Moreover, Myriad's contention that it cannot be liable for defamation because its statements concerned Quest's *products*, rather than Quest *reputation*, is absurd.  First, the statements certainly can be – and were – interpreted to concern Quest and its alleged provision of inaccurate test results, which is clearly damaging to Quest's business reputation.  Exs. 2, 6.  Second, statements about a company's products can subject the speaker to liability for defamation.  *See, e.g., Rosenberg v. J.C. Penney Co.*, 30 Cal. App. 2d 609, 620, 86 P.2d 696 (1939) (finding department store's disparaging description of competitor's products libelous *per se*).

Finally, Myriad's assertion that Quest cannot state a claim for defamation because it allegedly has suffered no pecuniary damages must fail.  The meaning of Myriad's statements is clear: Quest provided "inaccurate [test] results" that resulted in "wrong [medical] care." These statements do not require any explanation or extrinsic facts for their meaning to be understood, and therefore constitute libel *per se*.  *See* Cal. Civ. Code § 45(a) ("A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as inducement, innuendo, or other extrinsic fact, is said to be libel on its face.").  Damage to the plaintiff's reputation

is presumed when the statements are defamatory on their face (or "*per se*"). *Barnes-Hind*, 181 Cal. App. 3d at 382 ("[Damage] to Plaintiff's reputation is conclusively presumed and [it] need not introduce any evidence of actual damages in order to obtain or sustain an award of damages including, in an appropriate case, punitive damages.").

Quest's proposed amendments properly state a cause of action for defamation.

### b)   *Myriad's Defamatory Statements Are False and Myriad Offers Absolutely No Support for Its Contentions Regarding Truth*

Myriad attempts to circumvent the consequences of its defamatory conduct by claiming its statements are true.  Dkt. No. 42, Myriad Br. at 21.  While truth is a defense to a claim of defamation, "[t]he burden rests with the defendant to justify or show the truth of the statements."  *Smith*, 72 Cal. App. 4th at 646.  Here Myriad has offered absolutely no evidence to support its contention that its statements were truthful.

Myriad's email expressly stated that "patients [had] already received inaccurate results that have resulted in the wrong care."  Ex. 2.  However, when Quest asked Myriad to produce documents to support its allegation that Quest had caused inaccurate BRCA test results and wrong care, Myriad refused.  Exs. 4, 6.  Moreover, Myriad's email specifically references "recent data" that supports its contentions regarding the alleged inaccuracy of Quest's BRCA Assay.  Ex. 2.  Myriad also refused to provide the supposed "recent data."  Exs. 4, 6.  Myriad cannot simply rely on its bald assertion that it was speaking the truth – it must prove that its statements were true.  *Smith*, 72 Cal. App. 4th at 646.  And such proof must be offered (if it actually exists) during the discovery phase of this case.

In addition, Myriad's claims regarding truth are inappropriate and irrelevant at this stage.  A motion for leave to amend is not the proper place to assert defenses to proposed causes of action.  *See, e.g., Echostar Satellite LLC v. Freetech Inc.*, No. C07-06124, 2009 U.S. Dist. LEXIS 132350, at *5-6 (N.D. Cal. July 7, 2009)

(rejecting argument that proposed amendments would be futile and noting that challenges that go to the merits of a claim, such as defenses and contentions that liability cannot exist, are better suited to motions under Rule 12(b)).  Myriad will have ample opportunity to assert whatever defenses it chooses when it answers Quest's amended complaint.

Myriad's claims that its statements cannot be deemed defamatory "because they are not directed at Quest" are equally unpersuasive.  As previously mentioned, Myriad's email states that patients had received "wrong care" as a result of "inaccurate [test] results" provided by "new labs."  Ex. 2. The only "new lab" mentioned by name in Myriad's email is Quest.  The statement was clearly intended to apply to Quest.  Moreover, "[t]here is no requirement that the person defamed be mentioned by name.  It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff."  *DiGiorgio Fruit Corp.*, 215 Cal. App. 2d at 569.  Thus, even if the email had not expressly identified Quest (which it does), Myriad could still be liable for defamation.

Finally, Myriad's repeated assertions that it "corrected" its statements are belied by its own words: *nowhere* in its allegedly "corrective" email did Myriad state that it was *not* referring to Quest. Ex. 6. On the contrary, Myriad continued to claim that patients had received incorrect test results from "other labs," *i.e.*, labs *other* than Myriad.  *Id.*  The fact that Myriad and ██████████ knew that all BRCA tests were administered by Quest, coupled with the fact that Myriad insisted on an opportunity to present its "data" so that ████████ could "avoid a situation where a patient is managed sub-optimally based on incorrect genetic test results," can lead to no other conclusion but that Myriad was referring to Quest. Indeed, there would have been no need for Myriad to present its "data" if it was referring to a third-party laboratory that ████████ was not using.

Quest's proposed amendments are proper, and Myriad's claims of futility lack merit.

### B. THE COURT SHOULD IGNORE MYRIAD'S BASELESS ALLEGATIONS OF BAD FAITH AND INCORRECT CONCLUSIONS ABOUT JUDICIAL ECONOMY

Given the serious nature of the factual allegations in its proposed First Amended Complaint, Quest takes strong exception to Myriad's characterization of this motion as a "litigation tactic." As shown above, the causes of action clearly are not futile. Quest has reasonably and judiciously taken affirmative steps to protect its rights and economic interest against Myriad's unlawful behavior. The same commercial diagnostic test at issue in the new causes of action is also at issue in the patent claims. For this reason, judicial economy *would* be served by permitting Quest leave to amend its complaint. Requiring Quest to seek relief involving the same test and the same parties, in a separate action, would actually increase the burden on the courts and the expense to the parties.

### CONCLUSION

For the foregoing reasons, Quest respectfully requests that the Court grant its motion for leave to file a first amended complaint to address defamation and unfair competition due to Myriad's misconduct.


January 20, 2014                   Respectfully submitted,

                                   ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


                                   By:___/s/ David Martinez_____
                                        DAVID MARTINEZ

                                   Attorneys for Plaintiffs
                                   QUEST DIAGNOSTICS INCORPORATED
                                   and QUEST DIAGNOSTICS NICHOLS
                                   INSTITUTE